Argued and submitted March 10, affirmed September 1, 2004

Faith BACHMEIER
and Michael Bachmeier,
*Appellants,*

*v.*

Douglas A. TUTTLE,
*Defendant,*
*and*

David B. WILES;
Robert May; and Ashcroft and Wiles, LLP,
*Respondents.*

0106-06362; A118695

96 P3d 871

Michael S. Morey argued the cause and filed the briefs for appellants.

Peter R. Mersereau argued the cause for respondents. On the brief were Thomas W. McPherson and Mersereau & Shannon, LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiffs appeal, assigning error to the allowance of summary judgment against their claim for wrongful initiation of a civil proceeding against defendants, two attorneys and their law firm.[1] Plaintiffs contend, *inter alia*, that, in opposing summary judgment, they proffered legally sufficient evidence that defendants filed the prior litigation without probable cause and that they did so for an improper purpose. As described below, we conclude that plaintiffs' evidentiary submissions did not raise a genuine issue of material fact that defendants, in filing the prior action on their client's behalf, acted with "a primary purpose other than that of securing an adjudication of the claim." *Alvarez v. Retail Credit Ass'n*, 234 Or 255, 260, 381 P2d 499 (1963). Accordingly, we affirm.

■    ORCP 47 C prescribes the standards for the allowance of summary judgment:

> "The court shall enter judgment for the moving party if the pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment. The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."

Consistently with that standard, in reviewing the allowance of summary judgment, we draw all reasonable inferences in favor of plaintiffs, the nonmoving parties. *Johnstone v. Zimmer*, 191 Or App 26, 32, 81 P3d 92 (2003).

---

[1] Douglas Tuttle, the client on whose behalf defendants had initiated the prior action, was also named as a defendant in this action. Tuttle moved separately for summary judgment, and the trial court denied that motion. That denial is not at issue in this appeal. Consequently, "defendants" as used here, refers to the individual attorneys, David B. Wiles and Robert May, and the law firm of Ashcroft and Wiles, LLP.

So viewed, the record discloses the following facts: In 1986, when plaintiff Faith Bachmeier (Faith) was 15, she disclosed to a church youth teacher that she had been abused by her uncle, Douglas Tuttle. According to Faith, Tuttle had sexually abused her for approximately five years, when she was between the ages of 8 and 13. The teacher told the church pastor about Faith's disclosure, and, in response to inquiries by the pastor, Tuttle admitted that he had abused both Faith and her sister.

In 1999, Faith consulted with an attorney, Morey, about filing a civil action against Tuttle, seeking damages for the abuse. In March 1999, Morey prepared a draft complaint and delivered it to Tuttle. That complaint alleged that Tuttle's abuse caused Faith to suffer severe physical, emotional, and psychological harm and sought damages in excess of $2 million. In response, Tuttle retained defendants Wiles and May and their law firm to defend him in that threatened action and to explore possible civil remedies against Faith for making statements that Tuttle deemed to be false and defamatory. Tuttle told defendants that he had never abused Faith.

Defendants contacted Morey to discuss the parties' contentions. As a result of those conversations, Morey sent defendant Wiles a letter that detailed evidence that, in Morey's view, substantiated Faith's charges, including a statement from the pastor to whom Tuttle had admitted the abuse in 1986. Morey enclosed a copy of that statement for defendants' review. In addition, Morey's letter outlined his response to an anticipated defense that Faith's claims were time-barred.

Defendants discussed the pastor's statements with Tuttle. Tuttle reiterated that he had never abused Faith and posited that the pastor must have been confused because he had told the pastor that he had abused Faith's sister, and not Faith.

Ultimately, Faith did not file the contemplated action against Tuttle. However, in early 2000, Tuttle instructed defendants to prepare a complaint against Faith, alleging claims based on her statements that Tuttle had

abused her. Those claims were particularly predicated on events alleged to have occurred in June 1998.

In May 2000, at Tuttle's instance, defendants filed an action against Faith in federal court, alleging claims of defamation, false light, and intentional infliction of emotional distress. At the time they filed that action, defendants erroneously believed that all three of those claims were governed by a two-year statute of limitations.[2] Approximately one week later, defendants filed an amended complaint, based on the same June 1998 events, naming Faith's husband, plaintiff Michael Bachmeier, as an additional defendant. In early August 2000, defendants obtained leave of the court to withdraw as Tuttle's counsel. Tuttle proceeded *pro se* and, in September 2000, voluntarily dismissed the federal court action.

In June 2001, plaintiffs brought this action, alleging claims against Tuttle and defendants for wrongful initiation of a civil proceeding. Plaintiffs' complaint alleged, in part, that defendants "had obtained information and documentation substantiating [Tuttle's] sexual abuse" of Faith and that, consequently, defendants had "acted without probable cause" in filing the complaint against plaintiffs because they were aware that the premise of Tuttle's claims—that Tuttle had not abused Faith—was false. Plaintiffs further alleged that defendants had failed to "conduct any investigation into the facts before making the determination to proceed." Finally, plaintiffs alleged that, despite their knowledge that Tuttle's claims were false, defendants had

> "subjected plaintiffs to severe emotional distress in conscious disregard to plaintiffs' rights for the purposes of obtaining payment of legal fees and to further the desires of their client, Tuttle, to reap revenge and cause emotional distress and financial burden on plaintiffs."

Defendants moved for summary judgment, raising a variety of arguments. Of particular pertinence to our review, defendants contended that plaintiffs could not adduce legally sufficient evidence that (1) defendants had initiated Tuttle's

---

[2] In fact, defamation claims are governed by a one-year statute of limitations. ORS 12.120.

federal court action against plaintiffs without having probable cause to bring that action; and (2) defendants acted for a primary purpose other than securing an adjudication of Tuttle's claims.[3] Defendants asserted that they had probable cause to file the federal court action because, based both on Tuttle's representations to them and on their own investigation, they reasonably believed at the time that action was filed that there were valid factual and legal bases for each of the three claims. Further, defendants argued that there was "no evidence whatsoever that the attorney defendants acted with ill will, hostility or any other improper motive towards these plaintiffs when they filed the underlying civil action."

The trial court granted summary judgment, concluding that plaintiffs had failed to raise a genuine issue of material fact as to whether defendants, in filing the federal court action, did so without probable cause:

> "Both parties seem to accept the proposition that the lawyer defendants lacked 'probable cause' to represent Tuttle in his claim against [plaintiffs] unless they actually believed Tuttle's version of the facts. If a litigant pursues a knowingly false claim, that would be without probable cause. But a lawyer need not necessarily believe the client's version of the facts to assert those facts as either a claim or a defense. A lawyer would be acting without probable cause only if he were to bring a claim or assert a defense where the lawyer knew or should have known that there was no evidence to support a factual finding which would legally constitute the claim or defense asserted. The choice between Faith Bachmeier's and Douglas Tuttle's version of events is one of fact for a jury, no matter how much more persuasive one version might look to a lawyer evaluating the case or to a judge on a summary judgment motion."

Given its conclusion that plaintiffs could not establish that defendants had acted without probable cause, the court did

---

[3] As described below, lack of probable cause and improper purpose are separate and distinct elements of the tort of wrongful initiation of civil proceedings. *See* 195 Or App at 89. Moreover—and of dispositive significance here—even if a plaintiff adduces evidence that an attorney defendant prosecuted claims on a client's behalf without probable cause, that proof, without more, is legally insufficient to establish that the attorney acted for an improper purpose. *See* 195 Or App at 90-91 (discussing *Clausen v. Carstens*, 83 Or App 112, 117 n 12, 730 P2d 604 (1986), and *Restatement (Second) of Torts* § 674 comment d (1977)).

not address defendants' additional, and alternative, contention that they were entitled to summary judgment because plaintiffs had failed to make a *prima facie* showing that defendants had acted for a primary purpose other than securing an adjudication of their client's claims.

On appeal, the parties reiterate their arguments and responses before the trial court. We do not address the bulk of those contentions—and, necessarily, imply no view as to their merits—because one matter is dispositive: In opposing summary judgment, plaintiffs failed to adduce legally sufficient evidence that defendants acted for an improper purpose in bringing the federal court action on their client's behalf.

*Alvarez*, 234 Or at 259-60, describes the elements of the tort of wrongful initiation of a civil proceeding under Oregon law:

"(1)  The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;

"(2)  The termination of the proceeding in the plaintiff's favor;

"(3)  The absence of probable cause to prosecute the action;

"(4)  The existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and

"(5)  Damages."

Plaintiffs' argument as to the sufficiency of their proof of "improper purpose" proceeds from two premises. *First*, contrary to the trial court's determination, a reasonable juror could conclude from plaintiffs' proof that defendants did, in fact, know that Tuttle's claims against plaintiffs were legally and factually groundless—and, thus, there was a genuine issue of disputed material fact as to the "lack of probable cause" element of the tort. *Second*, the same evidence that established defendants' lack of probable cause supports a reasonable inference that defendants acted for a primary purpose other than securing an adjudication of

Tuttle's claims. As support for that second—and, here, critical—premise, plaintiffs point to *Alvarez*. Specifically, plaintiffs invoke *Alvarez*'s observation that "the law will permit the jury to draw an inference of malice in most cases where a want of probable cause is found." *Id.* at 264.

Plaintiffs' reliance on *Alvarez* is misplaced. Rather, as we observed in *Clausen v. Carstens*, 83 Or App 112, 730 P2d 604 (1986), when a wrongful initiation action is brought against an attorney who prosecuted claims on a client's behalf, the fact that the attorney believed the claims to be without probable cause does not, without more, support a legally sufficient inference that the attorney acted for an improper purpose in doing so.

In *Clausen*, the plaintiff, after a bitter marital dissolution suit, sued his ex-wife's attorneys, alleging a number of tort theories, including "malicious prosecution,"[4] based on allegations that the attorney had improperly obtained a receivership order and restraining order *ex parte*. We held that the complaint "sufficiently plead[ed] that defendants acted maliciously and without probable cause," *id.* at 118, but, in doing so, we emphasized:

> "An attorney is not liable for malicious prosecution unless the attorney acts *both* without probable cause to believe the client's claim will succeed *and* for an improper purpose. An attorney *may* properly present a client's claim for adjudication, **even though the attorney believes it to be without probable cause**, if the client insists that the attorney do so."

*Id.* at 117 n 12 (emphasis in original; boldface added). As the basis for that principle, we cited with approval *Restatement (Second) of Torts* section 674 comment d (1977). That comment states, in part:

> "An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action; and even if he has no probable cause and is convinced that his client's

---

[4] In *Clausen*, as in a number of other cases, *see, e.g., Alvarez*, 234 Or at 265, the court used the term "malicious prosecution" as imprecise shorthand for wrongful initiation of a civil proceeding. *See Mantia v. Hanson*, 190 Or App 412, 419 n 6, 79 P3d 404 (2003) (noting common confusion of terms).

claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances."

(Citations omitted.) *See also Checkley v. Boyd*, 170 Or App 721, 735-37, 14 P3d 81 (2000), *rev den*, 332 Or 239 (2001) (citing *Restatement* section 674 with approval).[5]

■      In sum, the fact that an attorney defendant prosecuted a prior action on a client's behalf without probable cause cannot, by itself, support a legally sufficient inference that the attorney acted with an "improper purpose." Rather, there must be other, independent evidence substantiating an attorney defendant's "improper purpose" before such a defendant can be held liable for wrongful initiation of a civil proceeding.

That principle is conclusive here. Even assuming, without deciding, that there is legally sufficient evidence that the defendant attorneys and their firm acted without probable cause in filing Tuttle's federal court action, such evidence cannot, without more, establish that they acted primarily for an improper purpose. Similarly, the results of defendants' prefiling investigation—or the deficiencies of that investigation—while bearing on defendants' purported lack of probable cause, cannot, without more, support an actionable inference that defendants acted for the primary purpose of (in plaintiffs' words) "obtaining payment of legal fees and to further the desires of their client, Tuttle, to reap revenge and cause emotional distress and financial burden on plaintiffs." In opposing summary judgment, plaintiffs proffered nothing more than speculation to substantiate that allegation.

---

[5] We note that there may well be a tension between the principle expressed in *Restatement* section 674 comment d and an attorney's obligations under ORCP 17 C (addressing certification of pleadings). However, the remedies for violation of the certification requirement, ORCP 17 D, are distinct from the imposition of tort liability for wrongful initiation.

*Alvarez*, which plaintiffs invoke, is not to the contrary. We note, particularly, that in *Alvarez* itself the court was explicit that "improper purpose" could *not* be inferred from "lack of probable cause" in all cases: "[T]he law will permit the jury to draw an inference of malice *in most cases* where a want of probable cause is found." *Alvarez*, 234 Or at 264 (emphasis added). Further, and of particular significance here, the defendant in *Alvarez* was not an attorney who had prosecuted the prior proceeding on a client's behalf; rather, the defendant there was a collection agency that had pursued a collection action in its own name. 234 Or at 258-59. Thus, *Alvarez* did not implicate the principle expressed in *Restatement* section 674 comment d and endorsed in *Clausen*.

We note, finally, that plaintiffs' reliance on *Wroten v. Lenske*, 114 Or App 305, 835 P2d 931, *rev den*, 314 Or 574 (1992), is also unavailing. There, the defendant had filed a libel action on his own behalf against the plaintiff. The defendant stated that his reason for doing so was to "teach [the] plaintiff a lesson." *Id.* at 308. The plaintiff's attorney subsequently wrote to the defendant, informing him that the allegedly defamatory letter had not, in fact, been published. *Id.* at 307. Nevertheless, the defendant refused to investigate and to dismiss his libel action because he " 'didn't care to waste [his] time investigating whether the letter had been published.' " *Id.* Thereafter, the defendant's libel action was dismissed when he failed to comply with a court order regarding mandatory arbitration. *Id.*

The plaintiff then brought a wrongful initiation action. The trial court directed a verdict in favor of the defendant, and we reversed. *Id.* at 308. In so holding, we analyzed the defendant's failure to investigate as bearing on the lack of probable cause to maintain the original libel action, *id.* at 309, and also noted that the evidence of lack of probable cause, coupled with the defendant's admission that his motive for filing the action was to "teach plaintiff a lesson," was sufficient to create a jury question as to whether the defendant had acted for an improper purpose in maintaining the libel action. *Id.* at 308.

*Wroten* is materially distinguishable from this case in at least two respects. First, the defendant there filed the

original libel action on his own behalf. Consequently, nothing in our opinion refers to the special considerations, addressed in *Clausen* and *Restatement* section 674 comment d, that arise when a wrongful initiation claim is predicated upon an attorney's prosecution of a proceeding on a client's behalf. Indeed, *Wroten* does not refer at all to *Clausen* and, while including a citation to *Restatement* section 674 comment c, *see* 114 Or App at 309, that opinion does not refer to comment d. Second, as noted, in *Wroten* itself there was direct evidence of improper purpose, distinct from evidence of a lack of probable cause, *viz.*, the defendant's admission that he had filed and maintained the libel action "to teach plaintiff a lesson." *Id.* at 308.

In sum, even assuming, without deciding, that plaintiffs adduced legally sufficient evidence that defendants acted without probable cause, they failed to proffer legally sufficient evidence that defendants initiated the federal court action, including the filing of both the original and amended complaints, for a primary purpose other than to secure an adjudication of Tuttle's claims. Accordingly, the trial court did not err in granting defendants' motion for summary judgment.[6]

Affirmed.

---

[6] Our analysis and disposition obviates any need to address defendants' cross-assignment of error.